```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

_____
                                   )
STATEWIDE TOWING ASSOCIATION,      )
INC., TOWING AND RECOVERY          )
ASSOCIATION OF AMERICA, INC.,      )
C&L TOWING, LLC, WALTHAM AUTO      )
TOW, INC.,INTERSTATE WRECKER       )
SERVICES, INC., and                )
SCHLAGER'S AUTO BODY REPAIR, INC., )
                                   )          Civil Action
                Plaintiffs,        )       No. 19-40140-PBS
                                   )
        v.                         )
                                   )
KERRY GILPIN, in her official      )
capacity, and  THOMAS TURCO,       )
in his official capacity,          )
                                   )
                Defendants.        )
_____)


## MEMORANDUM AND ORDER

November 26, 2019

Saris, C.J.

This lawsuit challenges a recent Request for Response ("RFR") that proposes new requirements applicable to tow truck operators who seek to provide certain involuntary towing, recovery, and HAZMAT services for the Massachusetts State Police. Plaintiffs, two towing industry organizations and a handful of individual tow truck operators, claim the RFR is (1) preempted by the Federal Aviation Administration Authorization Act ("FAAAA") and (2) impermissible under state

law because it is arbitrary and capricious and usurps the regulatory authority of the Department of Public Utilities. Plaintiffs have moved for a preliminary injunction to prevent the implementation of the RFR while their legal challenge is being adjudicated. The RFR's first response deadline is currently set for December 5, 2019.

In order to issue a preliminary injunction, the Court must consider "(1) the movant's likelihood of success on the merits; (2) the likelihood of the movant suffering irreparable harm; (3) the balance of equities; and (4) whether granting the injunction is in the public interest." Shurtleff v. City of Boston, 928 F.3d 166, 171 (1st Cir. 2019). Plaintiffs are unlikely to succeed on the merits of their federal preemption claim because the RFR does not have "the force and effect of law" and, in any case, the RFR fits within the FAAAA's savings clause for nonconsensual towing. And they are unlikely to succeed on the merits of their state law claims because they are barred by sovereign immunity from raising those claims in federal court. After hearing, Plaintiffs' motion for a preliminary injunction (Dkt. No. 18) is **DENIED**.

## BACKGROUND

In September 2019, the State Police introduced the RFR to "solicit[] bidders for the acquisition of Tow, Recovery, Service, and HAZMAT services, across the Commonwealth in order

2

to maintain public safety and provide rapid assistance to motorists." Dkt. No. 31-1 at 5. The RFR applies only to "police-directed involuntary towing, service and recovery of vehicles." Id. Successful bidders "shall provide emergency towing and related services upon all ways within the Commonwealth when directed by [State Police] personnel." Id. The State Police will assign successful bidders to predetermined tow zones. Either one bidder or multiple bidders will be assigned to each tow zone. The State Police will "ensure that in [tow zones] where multiple tow companies are assigned . . . all calls for service will be distributed through a fair and equitable system." Id.

The RFR proposes to replace the State Police's existing "tow list" system, which has been in place for decades. Under the current system, tow truck operators that meet certain minimum qualifications can apply to be included on individual State Police barracks' list of approved tow vendors. The State Police proposed the RFR because the existing system "has sometimes resulted in disparate practices among different [State Police] barracks." Dkt. No. 29-1 ¶ 12. The State Police also has found that "that the existing system has occasionally resulted in the provision of subpar towing services." Id. ¶ 13.

To that end, the RFR contains a far more robust set of minimum qualifications and procedures than the current system. For example, tow truck operators are required to provide related

3

services such as "roadside assistance" in addition to standard towing services. They also must comply with various licensing and background check requirements; they must own specific equipment in specific quantities; they must bring certain supplies to the scene of every tow; and they must untilize the shortest legal route when towing vehicles. The RFR also places limits on the amount bidders can charge for various towing, recovery, and HAZMAT services. However, under the RFR, tow truck operators will charge the towed vehicles' owners for their services, not the State Police.

The RFR is to be implemented in phases. The State Police divides Massachusetts into six different troop patrol areas: A, B, C, D, F, and H. So far, only Troop H, which covers the Greater Boston area, has solicited bids pursuant to the RFR. The State Police have extended the response deadline for Troop H twice already, and the current deadline is December 5, 2019.

## DISCUSSION

### I. Federal Preemption

The FAAAA prohibits states and municipalities from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). This preemption provision applies to state and municipal regulation

of the tow truck industry. See City of Columbus v. Ours Garage & Wrecker Serv., Inc., 536 U.S. 424, 430 (2002); see also 49 U.S.C. § 13102(14) ("The term 'motor carrier' means a person providing motor vehicle transportation for compensation."). Yet the FAAAA recognizes an exception for state and municipal actions "relating to the regulation of tow truck operations performed without the prior consent or authorization of the owner or operator of the motor vehicle." 49 U.S.C. § 14501(c)(2)(C).

**A. Force and Effect of Law**

Defendants argue the RFR is not subject to preemption because it does not have the "the force and effect of law." See Am. Trucking Ass'ns, Inc. v. City of Los Angeles, 569 U.S. 641, 648 (2013). In their view, the RFR is a contractual arrangement designed to serve the State Police's procurement needs, not to impose a set of regulatory requirements on the tow truck industry. And "[t]he 'force and effect of law' language in § 14501(c)(1) excludes . . . everyday contractual arrangements from the [preemption] clause's scope." Id. Defendants find support for their position in the decisions of three circuit courts of appeals that have found that similar police towing arrangements are outside the scope of § 14501(c)(1) because they did not have the force and effect of law. See Petrey v. City of Toledo, 246 F.3d 548, 558-59 (6th Cir. 2001) (finding city

5

ordinances "dealing exclusively with non-consensual, police-ordered tows" not preempted because they "do nothing more than serve the City's narrow proprietary interest in working with those towing companies who will be most able to meet safety and efficiently [its] towing needs"); Tocher v. City of Santa Ana, 219 F.3d 1040, 1049-50 (9th Cir. 2000) (finding city's rotational tow list for police-ordered tows not preempted because it allowed city "to contract with the party who is able to deliver the most inexpensive, efficient, and reliable towing services by acting as any other private consumer would in a competitive market"); Cardinal Towing & Auto Repair, Inc. v. City of Bedford, 180 F.3d 686, 693-94 (5th Cir. 1999) (finding city ordinance regulating nonconsensual tows was not preempted because city "acted as a typical private party would act in seeking a towing service, and preemption should not apply").

Plaintiffs point to no contrary authority. Rather, they counter that the RFR is essentially regulatory because (1) it prescribes binding standards of conduct on tow truck operators; (2) the State Police are not behaving as would a typical private party; and (3) the RFR does not address a specific proprietary problem. None of these arguments is persuasive. The binding standards of conduct contained in the RFR apply to only those tow truck operators that bid to be on the State Police's tow list, not to the towing industry as a

6

whole. See Cardinal Towing, 180 F.3d at 693-94. Meanwhile, there is nothing atypical about the State Police setting minimum bid requirements or bid deadlines -- private parties soliciting bids do so all the time. Further, the RFR is not a "coercive mechanism, available to no private party." Am. Trucking, 569 U.S. at 651 (finding city ordinance fell within preemptive scope of § 14501(c)(1) because it employed criminal sanctions).

The RFR does not fit squarely in the procurement context because the State Police will not actually pay for tow services. But the fact that the motor vehicle owner is stuck with the bill is not necessarily dispositive. See Cardinal Towing, 180 F.3d at 697 (holding that city's rate was proprietary even while a third party pays for service). Finally, the RFR serves a clearly appropriate interest of the State Police by providing "Tow, Recovery, Service, and HAZMAT services, across the Commonwealth in order to maintain public safety and provide rapid assistance to motorists." Dkt. No. 31-1 at 5. Therefore, the Court concludes that the RFR is outside the preemptive scope of § 14501(c)(1) because it does not have "the force and effect of law."

**B. Nonconsensual Towing Exception**

The RFR also fits within the exception for the regulation of nonconsensual towing. The "Scope of Services" states the RFR is intended "to ensure adequate and continuous coverage of all

7

ways for <u>police-directed involuntary towing, service and recovery of vehicles</u>." Dkt. 31-1 at 5 (emphasis added). An affidavit submitted by Brian Watson, who is a Major in the State Police and is responsible for implementing the RFR, details the situations in which the State Police will engage tow truck operators pursuant to the RFR. Major Watson explains that the State Police only "engage[] [tow] services when it becomes aware that a vehicle is obstructing a highway . . . and the owner or operator of the vehicle is unavailable, unable, or unwilling to remove the obstruction by engaging a tow on his own." Dkt. No. 29-1 ¶ 6. He adds "[w]here the operator of a disabled vehicle is available, able, and willing to engage his own tow vendor, [State Police] personnel typically will allow him the opportunity to do so. But, where he is not, the [State Police] will engage a tow vendor for his vehicle." <u>Id.</u> ¶ 9. By its express terms, then, the RFR applies only to nonconsensual towing and is not preempted by the FAAAA.

Nevertheless, Plaintiffs argue that the nonconsensual towing exception does not apply for two reasons. <u>First</u>, they posit that in some circumstances the RFR may apply to consensual tows. The hook for this argument is the statement by Major Watson that "every situation in which the [State Police] engages a tow vendor is properly considered a 'nonconsensual' towing situation." <u>Id.</u> ¶ 10. While his statement could be broadly read,

8

the terms of the RFR clearly anticipate its application to nonconsensual, involuntary tows. So long as the engagement was nonconsensual, the FAAAA does not apply. Compare Indep. Towers of Wash. v. Washington, 350 F.3d 925, 931 (9th Cir. 2003) (tow is nonconsensual when police "determine that a vehicle must be towed and the owner of the vehicle is not afforded the opportunity to request towing services from a specific company" (quoting R. Mayer of Atlanta, Inc. v. City of Atlanta, 158 F.3d 538, 541 n.2 (11th 1998))), with Cardinal Towing, 180 F.3d at 694 (tow is nonconsensual when "owner of the vehicle was unwilling or unable to specify a towing company"). The RFR expressly applies to "police-directed involuntary towing."

Section 3.5.1 of the RFR states that tow truck operators servicing commercial vehicles must adhere to specified rate caps "notwithstanding any private agreement or construct designed to evade the use of this schedule." Plaintiffs claim this language is proof the RFR might also regulate consensual tows. They suggest, for example, that a tow which begins as a police-ordered, nonconsensual tow can become consensual when the tow truck operator arrives at the scene and negotiates directly with the vehicle owner or operator for additional services. In this situation, Plaintiffs claim that § 3.5.1 would require the tow truck driver still adhere to the RFR's rate caps. The Court is not convinced. While the Court is uncertain what situations

might be covered by this language, the RFR by its terms only applies to nonconsensual tows.

Second, Plaintiffs contend the RFR is preempted to the extent it regulates recovery and HAZMAT services because those services are outside the scope of the nonconsensual towing exception. There are several problems with this argument. The FAAAA only preempts state and municipal regulations relating to "the transportation of property." 49 U.S.C. § 14501(c)(1). Unlike towing, neither recovery nor HAZMAT services directly involve the transportation of property, so it is unclear which regulation of those services is preempted by the FAAAA in the first place. But even if preemption were applicable, the RFR's requirements related to recovery and HAZMAT services would fit within the nonconsensual towing exception. Plaintiffs provide no authority for their position that the exception only applies to towing services and not any other services provided by tow truck operators. Indeed, the language of § 14501(c)(2)(C) does not contain any support for the reading urged by Plaintiffs; rather, it authorizes "the regulation of tow truck operations performed without . . . prior consent or authorization." (emphasis added) "Tow truck operations" is broader than just "towing" and can be fairly read to encompass recovery and HAZMAT services that are also provided by tow truck operators. See Cedar Bluff 24-Hour Towing, Inc. v. City of Knoxville, 78 F. Supp. 2d 725, 730 (E.D.

Tenn. 1999) (finding recovery services were "part and parcel of the transportation of the towing operation and covered by the exception").

II. **State Law Claims**

Ordinarily, states cannot be sued in federal court absent an express waiver of sovereign immunity or an abrogation of sovereign immunity by Congress. See Va. Office for Prot. & Advocacy v. Stewart, 563 U.S. 247, 253 (2011). The Supreme Court has recognized an exception to this general rule, however, for suits brought against state officials for injunctive or declaratory relief based on the violation of a federal right. See Armstrong v. Exceptional Child Ctr., Inc., 135 S. Ct. 1378, 1390 (2015). Defendants point out that Massachusetts has not waived nor has Congress abrogated sovereign immunity with respect to Plaintiffs' claims. Accordingly, Plaintiffs have sued two individuals, Kerry Gilpin and Thomas Turco, in their official capacities.[1] Gilpin is the Superintendent of the State Police, and Turco is the Secretary of the Executive Office of Public Safety and Security responsible for overseeing the State Police. But this only saves Plaintiffs' federal preemption

---

[1] Plaintiffs originally sued just the State Police as an organization. After the State Police pointed out it was immune from suit, Plaintiffs filed an Amended Complaint adding Gilpin and Turco as defendants. Plaintiffs then voluntarily dismissed their claims against the State Police, so Gilpin and Turco are the only remaining defendants.

11

claim. Even where a lawsuit asserts a permissible federal claim against state officials, sovereign immunity still bars any pendent state law claims against those same officials. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 121 (1984). Plaintiffs do not dispute this point. Therefore, the Court finds that Plaintiffs are unlikely to succeed on the merits of their state law claims in this court because they are barred from pursuing those claims here.

**ORDER**

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction (Dkt. No. 18) is **DENIED**.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
Chief United States District Judge